RECORD NO. 12-1321

In The
# United States Court of Appeals
For The Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff – Appellee*,

and

**4219 UNIVERSITY DRIVE, FAIRFAX VIRGINIA; $28,534.22 IN FUNDS SEIZED FROM PNC BANK ACCOUNT NO. ENDING IN 4269,**

*Defendants,*

v.

**DUYGU KIVANC; TURAN KIVANC,**

*Parties-in-Interest – Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

**REPLY BRIEF OF APPELLANTS**

Jeffrey S. Jacobovitz
MCCARTHY, SWEENY & HARKAWAY, P.C.
1825 K Street, NW, Suite 700
Washington, DC  20006
(202) 775-5560

*Counsel for Appellants*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................... ii

I.      Statute of Limitations .................................................................................1

II.     Refusal to Allow Turan Kivanc's Remote Testimony ...................................6

III.    Conclusion .................................................................................................9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Dagen v. CFC Group Holdings, LTD*,
   No. 005682, 2003 WL 22533425 (S.D.N.Y. Nov. 7, 2003) ..........................8

*FTC v. Swedish Match N. Am., Inc.*,
   197 F.R.D. 1 (D.D.C. 2000) ...........................................................................8

*Giddings v. Astrue*,
   333 F. App'x. 649 (2d Cir. 2009) ...................................................................7

*Lester v. Chater*,
   81 F.3d 821 (9th Cir. 1995) ............................................................................7

*Sorensen v. Barnhart*,
   69 F. App'x. 864 (9th Cir. 2003) ....................................................................6

*United States v. $515,060.42 in United States Currency*,
   152 F.3d 491 (6th Cir. 1998) ......................................................................3, 6

*United States v. 5443 Suffield Terrace, Skokie, Illinois*,
   607 F.3d 504 (7th Cir. 2010) ................................................................4, 5, 6

*United States v. Janati*,
   237 F. App'x. 843 (4th Cir. 2007) ..................................................................2

*United States v. Lowry*,
   409 F. Supp. 2d 732 (W.D. Va. 2006) ............................................................5

*United States v. Smith*,
   44 F.3d 1259 (4th Cir. 1995) ......................................................................4, 5

**STATUTE**

19 U.S.C. § 1621 ...................................................................................................1

**RULES**

Fed. R. Civ. P. 43 ...................................................................................................7

Fed. R. Civ. P. 43(a) ............................................................................................6, 8

Appellants Turan and Duygu Kivanc (hereinafter "Kivanc") hereby file this Reply to respond to certain specific arguments raised by the United States of America (hereinafter "Appellee or United States") in its Response Brief.

## I.     Statute of Limitations

The relevant statute governing the statute of limitations with respect to the forfeiture allegation is 19 U.S.C. § 1621 (2006). The statute indicates that the government must bring charges within five years from the date "the alleged offense was discovered. . . ." Health care fraud formed the basis of the civil forfeiture action brought by the Government against the property in question since the Government alleged in its Complaint that the real property was purchased and renovated with monies obtained "through a conspiracy to fraudulently bill health care benefit programs." (J.A. 17).  The proceeds from the health care fraud formed the basis of the money laundering allegations. The conspiracy alleged in the Complaint does not distinguish between Remicade billings and other alleged health care fraud activities. Moreover, Dr. Kivanc has never been charged with money laundering.

The government now tries to circumvent the applicable statute of limitations by bifurcating the health care fraud into two distinct charges: overprescribing of controlled substances and overbilling for Remicade. Appellee argues that it was aware of a different health care investigation regarding the Dr. Mert Kivanc

1

(hereinafter "Dr. Kivanc") that began in 2005 for overprescribing. The uncontroverted factual and legal record in this case clearly indicates otherwise. FBI Agent Aaron Weeter's (hereinafter "Weeter") testimony as case agent makes clear that the government was also investigating Dr. Kivanc for overbilling and overprescribing that occurred from 2004 until 2009 (J.A. 1049-50). *See also* (J.A. 154-156) (Weeter agrees that the Government became aware of health care fraud in April of 2005). Weeter further conceded that the earlier overbilling could have been "insurance fraud." (J.A. 168-69); *Accord*, *United States v. Janati*, 237 F. App'x. 843, 845 (4th Cir. 2007) (holding that the government presented sufficient evidence of the doctor's defrauding of Medicare and private insurance companies to sustain a conviction for health care fraud).

Further, issues of overbilling regarding prescriptions and the first indictment were referred to during the trial. (J.A. 1084 – Weeter stated that Khoa "lied about his involvement with Dr. Kivanc in the issuance of narcotic prescriptions"); (J.A. 1085-86 – Weeter stated Khoa "denied that he and Dr. Kivanc were involved in anything illegal with regard to the prescriptions, which we later determined was not true") ( J.A. 1266, 1332). The Government cannot have it both ways. This prejudicial evidence was admitted, as was the fact that there was a prior indictment. (J.A. 434, 1982). Also, the Government's interview notes of Kimberly Maxwell in April 2005 indicated in Par. 11 that Maxwell stated that Dr. Kivanc

would charge her for services she never received. (J.A. at 1979). This type of behavior certainly forms the basis of any alleged health care fraud (the underlying offense) and is outside of the statutory period.

Similarly, in *United States v. $515,060.42 in United States Currency*, 152 F.3d 491, 501-03 (6th Cir. 1998), the federal agent testified that she had been investigating the illegal operations since 1988, more than five years before the government filing of the forfeiture action in 1994, and the government was aware of this information. The government tried to argue that there was "a continuing violation of gambling laws and the currency seized was from relatively recent [illegal] operation and therefore the statute of limitations had not run." *Id.* at 502. The Court, however, rejected the government's argument as "misapprehend[ing] the onset of the running of the statute of limitations." *Id.* Specifically the Court noted, "the Government cannot disregard its discovery of earlier occurring offenses in preference for later offenses which would produce a more favorable timeline." *Id.* at 503. There is no criminal statute for Remicade fraud (J.A. 316, 1982).

Moreover, Appellee claims it did not become aware of the alleged money laundering until sometime during the statutory period. Yet, the underlying basis of the forfeiture claim is the health care fraud for purposes of the running of the statute of limitations. See Par. 9 of the Complaint (J.A. 17). The United States concedes it knew about Dr. Kivanc's alleged health care fraud outside of the

3

statutory period. According to Weeter, the starting date in 2004 of the investigation is uncontroverted with respect to health care fraud. And, it admitted in its interrogatories that it became aware of health care fraud allegedly committed by Dr. Kivanc in April of 2005. (J.A. 124, 1978-81).

To support its assertion that the statute of limitations should start running from the later offense, the government relies heavily on *United States v. 5443 Suffield Terrace, Skokie, Illinois*, 607 F.3d 504 (7th Cir. 2010). The government's reliance on this case, however, is misplaced. In *5443 Suffield Terrace*, the defendant had been convicted of two separate charges of smuggling, the first beginning in 1996 and the second from 1997 until 1999. Finding the defendant's house was paid for with cigar smuggling funds and used to facilitate the smuggling, the government argued the house was subject to forfeiture. Arguing that its 2002 filing was timely, the government asserted that the statute of limitations should start running on the later charged offense. The Court, agreeing with the government, held that "the March 1997 discovery of additional smuggled cigars constituted a 'fresh alleged offense,' and the statute of limitations therefore reset and began to run on *that* later date." *Id.* at 507.

Notably, the Court did not toll the statute of limitations until 1999, despite the fact that the smuggler had been laundering money through his house until that time. The government further improperly relies on *United States v. Smith*, 44 F.3d

4

1259, 1265 (4th Cir. 1995) to argue that money laundering is a separate offense and should therefore toll the statute of limitations. In *Smith*, the defendant was charged with multiple counts of money laundering. By contrast here, Dr. Kivanc, nor the Claimants, were ever charged with money laundering, let alone various counts of it. The only offense Dr. Kivanc was charged with was health care fraud, which, as described above, the government had knowledge of the alleged offenses in at least early 2005. Because Dr. Kivanc was not charged with money laundering, there was no superseding indictment which would reset the statute of limitations from that date. *Cf. United States v. Lowry*, 409 F. Supp. 2d 732, 739-40 (W.D. Va. 2006) (holding that a superseding indictment that relates back to the initial charges would not be barred by the statute of limitations).

In *Suffield Terrace*, for example, the Court specifically held that the operative date was the date the government discovered the underlying offense that gave rise to the forfeiture action, not the dates that the laundering through the house continued. *Suffield Terrace*, 607 F.3d at 508. *Suffield* does not apply here because, *inter alia*, the government in that case involved two separate and distinct charges of smuggling illegal contraband, whereas here, there is only one alleged underlying offense—the healthcare fraud. (J.A. 1982). Moreover, as discussed above, the government was investigating both aspects of the underlying offense, the overbilling and the overprescribing, as early as 2004. (J.A. 1049-51). Because

5

there was only one offense, this case is more like the government's attempt to restart the statute of limitations on a continuing violation theory alleged in *$515, 060*, than two separate and distinct charges in *5443 Suffield Terrace*. *Compare 515,060.42*, 152 F.3d at 501-03 *with 5443 Suffield Terrace*, 607 F.3d at 504-08. The District Court committed clear error.

**II.     Refusal to Allow Turan Kivanc's Remote Testimony**

The District Court denied the motions for remote testimony, pursuant to Fed. R. Civ. P. 43(a), of both Turan Kivanc (J.A. 746) and Mert Kivanc (J.A. 984). As noted previously, Turan provided the court a letter from his treating physician, which set forth a number of ailments preventing Turan's ability to travel. (J.A. 644). The Magistrate focused primarily on his kidney stones and denied the proposed testimony. (J.A. 726, 728). This ruling was upheld by the trial court. (J.A. at 746).

At trial, the United States stressed the opposing letter submitted by its own doctor, who had never seen or treated the Claimant. The treating physician's opinion, however, should be given far greater weight than that of a physician who has neither treated nor examined the patient. *See Sorensen v. Barnhart*, 69 F. App'x. 864, 966 (9th Cir. 2003) ("This is precisely the kind of information that a treating physician who sees a patient over a long period of time is in a better position to assess than an examining physician who sees a patient once and does

6

not have the patient's medical records."); *See also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Indeed, the treating physician's opinion as to the combined impact of the claimant's limitations-both physical and mental-is entitled to special weight."); *Giddings v. Astrue*, 333 F. App'x. 649 (2d Cir. 2009) ("treating source medical opinions are still entitled to deference"). Therefore, the Government doctor's opinion, that Turan was capable of travel despite his illness, should have been afforded less weight than the opinion of Turan's own treating physician.

Moreover, in its brief, the Government claimed the denial of this critical testimony was not an abuse of discretion. In support, the Government cites to the Fed. R. Civ. P. 43 advisory committee's note, which indicates that remote testimony should not be allowed for *mere* inconvenience to the witness. (Opposition, p. 28). The government conveniently omitted, however, the remainder of the Advisory Committee's note, which states:

> The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or **illness**, but remains able to testify from a different place. Contemporaneous transmission may be better than an attempt to reschedule the trial, particularly if there is a risk that other—and perhaps more important—witnesses might not be available at a later time.

Clearly the Magistrate Judge and the trial court abused their discretion in denying Turan Kivanc the opportunity to testify remotely when he was clearly suffering from an illness.

7

Turan's testimony was essential to establish how the Claimants paid their son for the property at issue and the fact that they were innocent *bona fide* purchasers. Since Turan's affidavits explaining these payments were denied as trial exhibits, the jury never heard why the payments were made in this fashion. Additionally, in footnote 2, the Government incorrectly claimed that there were inconsistencies in Turan's previous affidavits over the payments. (Response Brief at 28). In actuality, Turan indicated that he drafted cashiers' checks for the payments, consistent with his advice from Title Pro and then transferred the money back to Turkey since his son did not have a bank account in Turkey at the time. Dr. Kivanc was then paid in cash (J.A. 526-530, 572-74, 590-95, 602).[1]

The Claimants' initial brief cited numerous cases where video conferencing had been allowed and the Government failed to distinguish many of these cases. The distinctions that the government attempted to draw are immaterial to the Rule 43(a) analysis and whether remote testimony should have been allowed. *See e.g.*, *Dagen v. CFC Group Holdings, LTD*, No. 005682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003) (approving remote testimony where there were international travel, cost, and legitimate business concerns were reasons for allowing the testimony); *FTC v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, *1-2 (D.D.C. 2000) (finding no material difference between live and remote testimony).

---

[1] Weeter testified that Dr. Kivanc was not indicted for money laundering and was never warned not to transfer money to anyone. J.A. 1099.

8

The Claimants clearly put forward good cause and compelling circumstances. The combination of the denial of Turan's testimony, his previously filed affidavits and the denial of Mert's testimony,[2] led to the jury hearing a one-sided version of the transaction on the property at issue. The court's ruling effectively operated as a directed verdict in favor of the government on issues critical to the claimant's ability to fairly address the allegations. Therefore, the Court's denial was an abuse of discretion.

### III.   Conclusion

The trial court's rulings, inter alia, on remote testimony and affidavits improperly undercut Claimant's ability to present any evidence on issues critical to presenting a defense. These rulings were compounded by the court's refusal to give the Claimants' "theory of the case" instruction. (J.A. 936-39, 1637-38). For the reasons articulated above, and the reasons articulated in its initial Brief, Appellants' request that the jury verdict be reversed and the case be dismissed.

---

[2] The Government in its Response Brief continually referred to Dr. Kivanc as a "fugitive" (p. 31), but because he was never allowed to testify, the jury never heard his explanation as to why he went to Turkey prior to any indictment. There were no travel restrictions on Dr. Kivanc when he went to Turkey in 2007, over three years before his indictment.

9

Respectfully Submitted,
/s/ Jeffrey S. Jacobovitz
Jeffrey S. Jacobovitz
McCarthy, Sweeney & Harkaway, P.C.
1825 K Street, NW, Suite 700
Washington, DC 20006
Phone: (202) 775-5560
Fax: (202) 775-5574
*Counsel for Turan Kivanc*
*Counsel for Duygu Kivanc*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*2,169*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: August 21, 2012              /s/ Jeffrey S. Jacobovitz
                                    *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 21st day of August, 2012, I caused this Reply Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Brian D. Harrison
> Karen L. Taylor
> Office of the U.S. Attorney
> 2100 Jamieson Avenue
> Alexandria, Virginia  22314
> (202) 598-2509
>
> *Counsel for Appellee*

I further certify that on this 21st day of August, 2012, I caused the required copies of the Reply Brief of Appellants to be hand filed with the Clerk of the Court.

/s/ Jeffrey S. Jacobovitz
*Counsel for Appellants*